BIRDIE L. VALLEY, ADMINISTRATRIX OF ESTATE OF C. J. VALLEY, v.
CITY OF GASTONIA.

(Filed 14 December, 1932.)

**Municipal Corporation E c—Maintenance of properly constructed, sufficiently lighted traffic post at street intersection is not negligence.**

A traffic post or signal about three feet around at its base and about ten feet high, with the base sufficiently lighted at night, placed by a city at the center of the intersection of two of its streets is not such an obstruction as to amount to negligence in its maintenance, and where the evidence tends only to show that the plaintiff drove his automobile down the center of the street and struck the traffic light structure causing an injury resulting in his death, and that the signal post was lighted and could have been seen several blocks, the evidence is insufficient to be submitted to the jury, but where this result has been obtained by the jury's answering the issue of negligence in defendant's favor the judgment will be affirmed.

CIVIL ACTION, before *Finley, J.,* at January Term, 1932, of GASTON.

This was an action for wrongful death resulting from a collision of an automobile, driven by plaintiff's intestate, with a traffic post or silent policeman placed in the intersection of two streets of defendant city. An eye witness introduced by plaintiff narrates the events substantially as follows: "It was close to six o'clock in the morning when I would leave my work, it was dark, was not daylight. . . . As I backed out of the garage and got headed east on Franklin Street an automobile drove up behind me and followed me on down to my home, and as I stopped in front of my house he pulled around me over to the center of the street and never did get back out of the center, drove straight into the stop signal. It was about two hundred and fifty feet from my home. I saw him hit the structure. He was running about twenty miles an hour. He had followed me seven blocks down the street before I stopped at this place and had stayed behind me all the time. He passed me when I stopped at my front. The lights on his car were burning. When I heard the collision I went to him. I found the gentleman sitting under the steering wheel bent over the steering wheel. Nobody was there with him. I pulled him out of the automobile from under the steering wheel. He never spoke. . . . I did not notice particularly how the automobile was damaged, but it was pretty well torn up, the front end of it. . . . I did not notice any cars on Franklin Avenue going east or west at the time of the collision. . . . I could see the signal light from where I was. I could not recall right at the time if the light was burning. It was burning afterwards. I went up to it. I could not tell the

exact lights burning on this signal light. I guess the lights changed two or three times while I was there. You enter up to the light with the light red, and there will come the caution light before the green light comes on. There are three globes in the signal tower—red, caution and green, and those signal lights are four-way signals. There was a signal inside of both sides of the signal block on Franklin Avenue and on both sides of Church Street. . . . There was a little light that shone down toward the base of the signal, and that light was burning when I went up to take the man out. There was a street light on the corner. . . . I suppose you could get under that street light and read. . . . You could see the stop light from the top of the hill out here at Broad as far as that is concerned. That is seven blocks back. You could see the light that far. This particular signal light burned night and day. . . . I never see the signal lights out at Church and Franklin."

The evidence tended to show that the traffic post or signal structure with which plaintiff's intestate collided was about three feet around at the base and ten feet high, and on each side of the base were the words "drive to the right." This signal device was erected in the center of the intersection of Church and Franklin streets. It carried four iron bars which supported on the top thereof a four-way three-color electric traffic signal light. The lights at other street intersections in the vicinity were swinging street lights suspended above the intersection, and the plaintiff contended that the base of the traffic signal was substantially the same color as the ground, and further, that the fact that other street lights at intersections were suspended above the intersection tended to put the plaintiff's intestate off his guard as he approached the signal or traffic post at the intersection of Church and Franklin streets.

Issues of negligence, contributory negligence and damages were submitted to the jury, and the issue of negligence was answered in the negative.

From judgment upon the verdict plaintiff appealed.

*Clyde R. Hoey, John M. Robinson and A. Y. Arledge for plaintiff.*
*E. R. Warren and Cherry & Hollowell for defendant.*

BROGDEN, J. Is it a negligent act for a municipality to maintain in the center of a populous street intersection a traffic post or silent policeman properly constructed and sufficiently lighted?

The decided cases discussing the question now under consideration are *Aaronson v. City of New Haven,* 110 Atlantic, 872; *Riley v. City of Ronceverte,* 151 S. E., 174; *Vicksburg v. Harralson,* 101 Southern, 713;

*Town of Hobart v. Casbon,* 142 N. E., 138; *Titus v. Town of Bloom-field,* 141 N. E., 360. See Annotations, 12 A. L. R., 328, 39 A. L. R., 777. The *Hobart* and *Titus cases, supra,* were decided by the Indiana Court. The *Hobart case* involved a broken traffic post upon which no light was burning and around which there was no barricade at the time of the injury. It was held in the *Titus case* that a concrete post, without guard or light, or other means of notifying persons traveling upon the street, constituted a defect or obstruction of the street. The *Vicksburg case* decided by the Mississippi Court involved injuries sustained by reason of certain bumpers put in the street for slowing up traffic at intersections. Obviously, none of these cases are decisive of the principle involved in the case at bar.

The general principle governing liability of a municipality in such cases was stated by the Connecticut Court in the *Aaronson case, supra.* The Court said: "But, irrespective of the allegations of this complaint, it cannot be said that a sufficiently conspicuous guidepost for traffic placed at the intersection of two streets makes the highway defective. We take judicial notice of the common use of such devices at such locations, and that they do serve a useful purpose in directing traffic and promoting obedience to the law." The syllabus of the Court in the *Riley case* declares that: "The presence of a sufficiently conspicuous silent policeman, although not painted or equipped with a warning light, is not a defect in the highway within the meaning of the statute giving a right of action for injury caused by such defects (Code, chap. 43, sec. 167), if the city maintains, with reasonable diligence, lights in the vicinity thereof sufficient to inform travelers exercising ordinary care in the use of the way by night of its presence."

The plaintiff relies upon *Graham v. Charlotte,* 186 N. C., 649, 120 S. E., 466, and *Swinson v. Realty Co.,* 200 N. C., 276, 156 S. E., 545. The *Swinson case* involved the right of an individual to make permanent use of a portion of a public street, and the *Graham case* involved the encroachment of concrete posts beyond the curb line and in the line of travel, a distance of from one foot to three inches. These cases have no particular legal bearing upon the principle involved in the case now under consideration.

In the final analysis, the defendant properly installed a traffic post in the center of a populous intersection. Ample space for the use of travelers was provided on each side of the post. The post carried a small light designed to shine upon the base, and a four-way signal light at the top. These lights were all burning at the time of the unfortunate injury. The intestate of plaintiff drove down the center of the street, turning neither to the right nor to the left, but headed straight into

a lighted post and lost his life. The traffic signal was properly installed, and free from defect of any kind. Manifestly, such signal posts serve both a useful and necessary purpose in safeguarding human life. Consequently it was not a negligent act to properly install and maintain such a signal device at a dangerous intersection, and as the correct result has been attained the judgment is affirmed, *Rankin v. Oates,* 183 N. C., 517.

No error.